AO 106 (Rev. 04/10) Application for a Search Warrant       AUTHORIZED AND APPROVED/DATE: _____ 4/8/25

# UNITED STATES DISTRICT COURT
for the
Western District of Oklahoma

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. M-25- 204 -STE
A ROSE GOLD, APPLE IPHONE 16 CELL PHONE, UNKNOWN SERIAL NUMBER )
AND IMEI, CURRENTLY LOCATED AT THE FBI OKLAHOMA CITY FIELD OFFICE, )
3301 WEST MEMORIAL ROAD, OKLAHOMA CITY, OKLAHOMA )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

Located in the Western District of Oklahoma, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute and to Distribute Controlled Substances |
| 21 U.S.C. § 846 | Drug Conspiracy |

The application is based on these facts:
See attached Affidavit of FBI Special Agent, Ty Franklin

☐ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days:(_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Ty Franklin, Special Agent, FBI
Printed name and title

Sworn to before me and signed in my presence.

Date: Apr 8, 2025                     _____
                                       Judge's signature

City and state: Oklahoma City, Oklahoma    Shon T. Erwin, United States Magistrate Judge
                                            Printed name and title

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A ROSE GOLD, APPLE IPHONE 16 CELL PHONE, UNKNOWN SERIAL NUMBER AND IMEI, CURRENTLY LOCATED AT THE FBI OKLAHOMA CITY FIELD OFFICE, 3301 WEST MEMORIAL ROAD, OKLAHOMA CITY, OKLAHOMA | Case No. _____ |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Ty Franklin, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI). As a SA, I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and empowered by law to conduct investigations of, and to make arrests for offenses as set forth in 18 U.S.C. § 2516.

2.      I have been employed as a Special Agent with the FBI since May 2024. I first completed 22 weeks of training at the FBI Academy in Quantico, Virginia. During the training, I received instruction in a variety of investigative techniques commonly used in support of a wide range of the FBI's investigative priorities. The training included instruction regarding the use of confidential human sources, electronic and physical surveillance techniques, law enforcement tactics, search and seizure laws and techniques, interviewing strategies and skills, forensic techniques, and a variety of other subjects. I am currently assigned to the Oklahoma City Division, Lawton Resident Agency, where I have

been involved in a wide variety of investigative matters, primarily focused on violent crime. Prior to my employment as a Special Agent, I was an Investigative Specialist with the FBI in Omaha, Nebraska. In this capacity I specialized in physical surveillance in support of active FBI investigations.

3. The statements contained in this Affidavit are based on my personal investigative efforts, information provided by other federal, state, and law enforcement officers, the analysis of information obtained from surveillance, information from confidential sources, and other reports and documents. It is also based on my training and experience as a Special Agent of the FBI. Except where otherwise noted, the information set forth in this Affidavit has been provided to me directly or indirectly by Special Agents of the FBI or other law enforcement officers. Unless otherwise noted, wherever in this Affidavit I assert a statement was made, the information was provided by another law enforcement officer (who may have either direct or hearsay knowledge of the statement) to whom I have spoken or whose report I have read and reviewed. Such statements are among many statements made by others and are stated in substance, unless otherwise indicated. Similarly, information resulting from surveillance, except where indicated, does not set forth my personal observations, but rather observations provided directly or indirectly by other law enforcement officers who have conducted such surveillance.

4. I have participated in this investigation through but not limited surveillance, assisting in search warrants, interviews of witnesses, the review of documents and evidence to include to and an analysis of information obtained from other agents and law enforcement officers. I have personally participated in this investigation and am familiar

with the information contained in this Affidavit through personal investigation, discussions with other law enforcement personnel, interviews with witnesses, and review of reports and other related documentation, including the relevant federal criminal indictment and arrest warrant. The facts set forth below are based upon (1) my own personal observations; (2) reports and information provided to me or the FBI by other law enforcement; and (3) other documents obtained during the course of the investigation. All of the below-described dates and times-of-day set forth in this Affidavit are approximate.

5. This Affidavit is being submitted for the limited purposes of establishing probable cause for a search of the property described in Attachment A. Based on my training and experience and the facts set forth in this Affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841(a)(1) and 846 have been committed by Arturo Jiminez Valdez (JIMINEZ), Carolina Castorenia Jaramillo (CASTORENIA), Victor Manuel Sanchez Lopez, aka "Piñón" (PIÑÓN). There is also probable cause to search the property described in Attachment A for evidence of these crimes, as described in Attachment B. Since this Affidavit is being submitted for the limited purposes of establishing probable cause for a search of the property described in Attachment A, I have not included each and every fact known concerning this investigation.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

6. The property to be searched is a rose gold, Apple iPhone 16 cell phone, with an unknown serial number and unknown IMEI number (hereinafter, the **SUBJECT DEVICE**). The **SUBJECT DEVICE** is currently located at the FBI Oklahoma City Field Office, 3301 W Memorial Rd, Oklahoma City, OK 73134.

7.      The requested warrant would authorize the forensic examination of the **SUBJECT DEVICE** for the purpose of identifying electronically stored data that is particularly described in Attachment B, which constitute evidence of violations of 21 U.S.C. §§ 841(a)(1) and 846. The requested warrant would also authorize the seizure of the items and information specified in Attachment B.

## FACTS AND CIRCUMSTANCES

8.      On or around February 7, 2025, members of the FBI Oklahoma City Division Western Oklahoma Safe Streets Task Force were informed by investigators from the Northern District of Texas that a group of individuals (the "DTO") appeared to be trafficking drugs along the border of Texas and Oklahoma, primarily in the areas of Wichita Falls and Vernon, Texas, as well as Altus, Oklahoma. Investigators from the Northern District of Texas identified PIÑÓN as a person suspected of distributing or receiving drugs in Altus, Oklahoma.

9.      Subsequent investigation led investigators to identity a vehicle, specifically a Dodge vehicle registered to an Altus address (the "Altus Dodge"), that made multiple visits to PIÑÓN's residence in Wichita Falls, TX. These visits, usually characterized by short durations, suggested to investigators that they were related to drug trafficking. Furthermore, the Altus Dodge was registered to the same address which a local confidential informant recently stated could be operating on behalf of an unidentified cartel. The same confidential informant stated that two persons working on behalf of the cartel were a younger couple, possibly husband and wife, and that the husband or wife was former military or Mexican law enforcement. They also believed the couple had warrants in

Mexico or were being sought with a bounty from a rival cartel. The informant described the people affiliated with this same address as Mexican nationals, both Spanish speaking with multiple young children. The couple would leave their children in the custody of an elderly Mexican woman at an apartment in Altus, Oklahoma when they made their moves for money and or drug shipments. They would be gone for 24-36 hours, driving in West Texas, and other parts of Oklahoma including Oklahoma City and Tulsa delivering large amounts of drugs or transferring money on behalf of the cartel.

10.    Agents continued to surveil PIÑÓN's movements. On February 13, 2025, a court-authorized GPS tracker on his vehicle showed PIÑÓN traveling from Wichita Falls to Altus, where he visited a single residence, staying for only a few minutes, before departing and heading back to Wichita Falls. Based on my training, experience, and knowledge of the investigation, the long distance traveled for such a short trip leads me to believe that PIÑÓN was engaged in drug trafficking. When PIÑÓN arrived back in the area of Wichita Falls, Texas, law enforcement pulled him over and conducted a probable cause search of the vehicle, finding more than 500 grams of a substance which tested positive for methamphetamine. PIÑÓN also provided his passport, listing the name of Victor Manuel Sanchez-Lopez. Further, the tracking device showed that while in Altus PIÑÓN had visited a residence, 1501 Adams St., and a gas station, leading investigators to suspect that PIÑÓN obtained the methamphetamine from the residence.

11.    Upon responding to the residence at 1501 Adams St., Altus, Oklahoma, agents observed a white Nissan sedan (the "white Nissan"), parked outside the residence. The white Nissan was also registered to the same address as had been the Altus Dodge that

was observed visiting PIÑÓN's residence. While conducting physical surveillance on the residence, law enforcement pulled over the Altus Dodge after it departed the residence and committed a traffic violation (speeding). Pursuant to the traffic stop law enforcement identified two occupants. The driver, CASTORENIA, stated they had just arrived in Oklahoma after departing Mexico a few days ago. The passenger, JIMINEZ, attempted to hide on the floor of the back seat. At the time of the traffic stop a K-9 officer alerted on the vehicle and a search was conducted. The search did not yield any drugs, but investigators recovered three cell phones from the vehicle, one of which was the **SUBJECT DEVICE**. Agents then dialed the phone number, ending in 9828, that Wichita Falls investigators stated belonged to the DTO's methamphetamine supplier "Arturo," and agents heard one of the three cell phones in CASTORENIA's and JIMINEZ's vehicle ring.

12.     PIÑÓN also provided additional corroboration that CASTORENIA and JIMINEZ were his methamphetamine suppliers when, upon being shown a photo of 1501 Adams St. in Alus, he identified it as the residence where he had obtained methamphetamine. Agents then arrested JIMINEZ and allowed CASTORENIA to leave the scene.

13.     On the morning of February 14, 2025, law enforcement executed a search warrant at 1501 Adams St. and recovered, among other things, half a pound of a substance which field tested positive for methamphetamine, multiple firearms, magazines and ammunition, $18,880 in suspected drug proceeds, an electronic money counter, false social security cards and associated documents, two additional cell phones, several receipts for tens of thousands of dollars in wire transactions, two digital scales, and drug packaging

materials. Next to stacks of currency and two handguns' officers observed a photo of JIMINEZ and the dog located at the residence. Agents also confirmed that utilities for the residence were in the name of CASTORENIA.

14. Also on the morning of February 14, 2025, law enforcement executed a search Warrant at PIÑÓN's residence in Wichita Falls, locating an additional 649 grams of methamphetamine, $6,057 in suspected drug proceeds, 23 grams of cocaine, and a shotgun.

15. Finally, that same morning, agents located and arrested CASTORENIA. In the process of booking CASTORENIA into the Jackson County Jail and contacting ICE agents, they determined that CASTORENIA is a former Mexican federal law enforcement officer.

16. Based on my training and experience, I know that the **SUBJECT DEVICE** has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and a PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

17. Based on my training and experience, I know that drug trafficking is often a conspiratorial crime. Individuals who possess controlled substances with the intent to distribute them typically do so in groups and with the assistance of others. Drug traffickers often use their cell phones to communicate with other members of the drug-trafficking organization. Records of these communications and the contact information of co-conspirators are often saved on cell phones.

18. Based on my prior investigations of criminal activity involving prison gangs, to include drug trafficking, felony assaults, and threats to witnesses, I have determined that cell phones and communication are critical to the furtherance of such activity because incarcerated members of the prison gang must communicate with those members outside of prison. Therefore, cell phones typically hold information related to buyers and sellers of narcotics, timing of drug transactions, disposition of drug proceeds, addresses of stash locations, and communicating threats related to drug activity. Drug traffickers will often have multiple phones and change their phones if they are concerned about being under investigation by law enforcement. Despite the change in phones, drug traffickers will continue to maintain contacts through applications and social media profiles.

19. Based on my training and experience, I am aware that members of DTO's often use multiple cellphones as an attempt to protect themselves from potential prosecution. These phones are often dropped at any indication of law enforcement investigation. This is the case here, as law enforcement identified multiple cell phones being used by JIMINEZ and/or CASTORENIA throughout the course of this investigation.

20. Based on my training and experience, I know that drug traffickers often take and store photographs of themselves with controlled substances and the proceeds of drug sales, and usually take or store these photographs using their personal cell phones.

21. Based on my training and experience, I know that electronic devices like the **SUBJECT DEVICE** can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensic tools. This is true even if the

user of the **SUBJECT DEVICE** deleted the file. This is so because when a person "deletes" a file on a computer or electronic device, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

22. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **SUBJECT DEVICE** consistent with the warrant. The examination may require law enforcement to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the **SUBJECT DEVICE** to human inspection in order to determine whether it is evidence described by the warrant.

23. Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

24. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **SUBJECT DEVICE**, as described in Attachment A, to seek the items described in Attachment B.

Respectfully Submitted,

TY FRANKLIN
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on April 8, 2025:

SHON T. ERWIN
United States Magistrate Judge

## ATTACHMENT A

The property to be searched is a rose gold, Apple iPhone 16 cell phone, with an unknown serial number and unknown IMEI number, hereinafter the "**SUBJECT DEVICE**." The **SUBJECT DEVICE is** currently located at the FBI Oklahoma City Field Office, 3301 West Memorial Road, Oklahoma City, Oklahoma 73134. Two photos of the **SUBJECT DEVICE** are below:




This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

## ATTACHMENT B

The following materials, which constitute evidence of the commission of a criminal offense, contraband, the fruits of the crime, or property designed or intended for use, or which is or has been used as the means of committing a criminal offense, namely a violation of Title 21, United States Code, Section 841(a)(1) and Title 21, United States Code, Section 846:

1. All records on the **SUBJECT DEVICE** described in Attachment A that relate to violations of 21 U.S.C. §§ 841(a)(1) and 846 involving Arturo Jiminez Valdez (JIMINEZ), Carolina Castorenia Jaramillo (CASTORENIA), Victor Manuel Sanchez Lopez, aka "Piñón" (PIÑÓN), including:

    a. lists of customers and related identifying information;

    b. lists of co-conspirators and related identifying information;

    c. records of communications with customers or co-conspirators, whether such communication be a telephone call, text message (e.g., SMS or MMS), instant message, or communication through an application stored on the phone;

    d. records detailing the types, amounts, or prices of drugs trafficked, as well as dates, places, and amounts of specific transactions;

    e. any information related to the sources of drugs, including names, addresses, phone numbers, or any other identifying information);

    f. any audio recordings, pictures, video recordings, or still-captured images on the Device related to the purchase, sale, transportation, or

        distribution of controlled substances or the collection, transfer or laundering of drug proceeds;

    g.    all bank records, checks, credit card bills, account information, and other financial records; and

    h.    any location data related to the acquisition or distribution of controlled substances.

2.    Evidence of user attribution showing who used or owned the **SUBJECT DEVICE** described in Attachment A at the time the things described in this warrant were created, edited, or deleted, including:

    a.    logs, phonebooks, saved usernames and passwords, documents, and browsing history;

    b.    text messages, multimedia messages, email, email messages, chats, instant messaging logs, and other correspondence;

    c.    photographs;

    d.    records of Internet Protocol addresses used; and

    e.    records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

3.    Contextual information necessary to understand the evidence described in this attachment. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have

been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.